LYONS & FLOOD, LLP
One Exchange Plaza
55 Broadway, Suite 1501
New York, New York 10006
(212) 594-2400



Attorneys for Plaintiff's
ATLANTIC CONTAINER LINE AB and
NORWEGIAN HULL CLUB – GJENSIDIG ASSURANSEFORENING

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ATLANTIC CONTAINER LINE AB and NORWEGIAN HULL CLUB – GJENSIDIG ASSURANSEFORENING,<br><br>                              Plaintiffs,<br><br>            - against -<br><br>VOLVO CAR CORPORATION and VOLVO CARS OF NORTH AMERICA, LLC,<br><br>                              Defendants. | ECF CASE **14 CV 1811**<br><br>14 Civ.<br><br>**COMPLAINT** |

   Plaintiffs, ATLANTIC CONTAINER LINE AB (hereinafter "ACL") and NORWEGIAN HULL CLUB – GJENSIDIG ASSURANSEFORENING ("NHC"), by their attorneys LYONS & FLOOD, LLP, for their Complaint allege, upon information and belief, as follows:

   1.  This is a case involving a federal statute and subject to the jurisdiction of this court pursuant to 28 U.S.C. § 1331. This is also a case of admiralty and maritime jurisdiction within the meaning of 28 U.S.C. § 1333, Rule 9(h) of the Federal Rules of Civil Procedure, and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims.

   2.  Plaintiff ACL, is a Swedish corporation and at all relevant times was the registered owner of the M/V ATLANTIC CARTIER, a mixed Lo-Lo (lift on lift off) and Ro-Ro (roll on roll off) carrier, bearing official IMO number 8215481 (hereinafter the "ATLANTIC CARTIER" or the "Vessel").

3. Plaintiff NHC, is a Norwegian mutual marine insurance company with head offices located in Bergen, Norway, and at all relevant times was the lead hull insurer of the Vessel pursuant to a policy of marine hull insurance issued to ACL, the registered owner of the Vessel.

4. Plaintiff NHC brings this action on its own behalf and, as agent and trustee, on behalf of and for the interest of all those insurers participating in the said policy of marine hull insurance for their respective interests, as well as on behalf of and for the interest of its insured ACL for its respective interest.

5. At all relevant times mentioned herein, defendant VOLVO CAR CORPORATION ("VOLVO"), was and still is a corporation organized and existing under the laws of Sweden with a place of business in Gothenburg, Sweden.

6. At all relevant times mentioned herein, defendant VOLVO CARS OF NORTH AMERICA, LLC ("VOLVO LLC"), was and still is a limited liability company organized and existing under the laws of Delaware, with a place of business in Rockleigh, New Jersey, and is registered to do business in New York.

7. Venue is proper and this Court has jurisdiction over the defendants on the basis of their systematic and continuous business contacts and presence in the United States and this district, as well as their status as parties to agreements providing for the mandatory and exclusive selection of this Court as a forum for resolution of disputes relating to the subject matter of this lawsuit.

8. At all relevant times mentioned herein, Wallenius Wilhelmsen Lines AB, subsequently known as Wallenius Wilhelmsen Lines AS ("WWL"), was and still is a Swedish corporation and was a party with ACL to an Implementing Agreement dated December 13, 2007

(hereinafter the "Agreement"), which provided, among other things, for the chartering of space to WWL aboard ACL's vessels, including the Vessel, for the carriage of vehicles.

9. The Vessel was engaged in a liner service across the North Atlantic, and in late April of 2013, pursuant to the Agreement, the Vessel loaded a shipment of Volvo automobiles at Gothenburg, Sweden.

10. The Volvo automobiles were loaded aboard the Vessel under WWL sea waybills SE1322585 and SE1322589, and were to be delivered to ports in the United States.

11. Defendant VOLVO was listed as the shipper of the Volvo automobiles carried aboard the Vessel under the WWL sea waybills.

12. Defendant VOLVO LLC was listed as the consignee of the Volvo automobiles carried aboard the Vessel under the WWL sea waybills.

13. Plaintiff ACL constitutes a "Carrier" of the Volvo automobiles under the terms and conditions of the WWL sea waybills.

14. In addition to the Volvo automobiles, the Vessel, at this time, was also carrying various cargoes shipped pursuant to ACL bills of lading which were bound for the United States and Canada.

15. On April 30, 2013, at approximately 0430 hours, the Vessel departed Gothenburg, Sweden, bound for Hamburg, Germany.

16. The Vessel took on a pilot off Hamburg at approximately 0600 hours on May 1, 2013, and the Vessel was all fast by 1400 hours that same day.

17. During the early evening of May 1, 2013, the Vessel's crew became aware of a fire on Deck 3B.

18. The Vessel's crew immediately commenced firefighting efforts which were later supplemented by the services of the Hamburg Fire Department.

19. Upon information and belief, the origin of the fire was from one of the Volvo automobiles stowed aboard the Vessel on Deck 3B, portside.

20. The Vessel's crew and the Hamburg Fire Department fought the fire and the fire was declared to be extinguished at approximately 0410 hours on May 2, 2013.

21. The fire caused damage to the Vessel as well as damage to certain cargoes carried aboard the Vessel, including some of the Volvo automobiles (the "casualty").

22. As a result of the casualty, plaintiff NHC may be liable to pay hull insurance proceeds for the repair of the damage to the Vessel to plaintiff ACL. By virtue of such payment of hull insurance proceeds, plaintiff NHC will become subrogated to the rights of plaintiff ACL and therefore, will be the real party in interest with respect to amounts paid pursuant to the marine hull insurance policy.

23. The cost of repairs performed on the Vessel as a result of the casualty totals $4,397,150.00, as nearly as can now be determined.

24. As a result of the casualty, plaintiff ACL was exposed to liability to third-parties with respect to loss and damage to affected cargoes.

25. The extent of this exposure is unknown at present, but pending before this Court are claims in the amount of $1,500,000.00 asserted against plaintiff ACL by claimant Volvo Logistics North America. *See* Docket No. 10 filed in the action captioned *In the Matter of the Complaint of Atlantic Container Line AB, as Owner of the M/V ATLANTIC CARTIER, For Exoneration From or Limitation of Liability*, 13 Civ. 5227 (CM).

26. As a result of the casualty, plaintiff ACL incurred costs relating to the inspection and surveying of the Vessel and the affected cargoes, and relating to the discharging, cleaning, and further carriage of the affected cargoes.

27. As nearly as can now be determined, these direct costs incurred by plaintiff ACL were in the amount of $2,017.876.00, as nearly as can now be determined.

28. As a result of the casualty, the Vessel was caused to be out of service for approximately 61 days, causing a loss of net revenue with respect to the operation of the Vessel in the amount of approximately $4,193,347.00, as nearly as can now be calculated.

29. The casualty, and the losses, damages, injuries, and destruction resulting therefrom were not caused or contributed to by any fault, neglect, or want of care or design on the part of the Vessel or those in charge of her, or by plaintiff ACL, or anyone for whom plaintiffs may be responsible.

30. The casualty, and the losses, damages, injuries, and destruction resulting therefrom for which claims have been or may be made against plaintiff ACL and the Vessel, and all other damages in any manner arising out of said fire, were occasioned and incurred without the privity or knowledge of plaintiffs or any of their directors, officers, stockholders, or agents, and without the privity or knowledge of the Master of the Vessel, the superintendent, or managing agent of plaintiff ACL at or prior to the commencement of the voyage.

31. Based on the current evidence, it is believed that one or more Volvo automobiles, which were manufactured, shipped, owned, sold, and/or bought by defendants are responsible for the fire that occurred on or about May 1, 2013, on board the Vessel and all of the resulting damages and losses.

5

**FIRST CAUSE OF ACTION**

32. Plaintiffs reiterate, repeat and reallege the foregoing paragraphs numbered 1 through 31, inclusive, with the same force and effect as if fully set forth herein.

33. Defendants, as manufacturers, shippers, owners, sellers and/or buyers, respectively of the Volvo automobiles, were obligated to adequately warn and/or inform plaintiff ACL as to the inherently dangerous nature of the Volvo automobiles.

34. Defendants' failure to adequately warn and/or inform plaintiff ACL as the owner of the Vessel and/or the Carrier or its subcontractor, of the inherently dangerous, inflammable and/or explosive nature of the Volvo automobiles makes defendants strictly liable for all of the damages and expenses, directly or indirectly, arising out of or resulting from such shipment pursuant to 46 U.S.C. § 30701 note §4(6) (formerly, 46 U.S.C. § 1304(6)) and any and all other applicable law.

35. As a result of defendants' failure to adequately warn and/or inform plaintiff ACL, as the owner of the Vessel and/or or the Carrier or its subcontractor, of the inherently dangerous nature of the Volvo automobiles, the Volvo automobiles were loaded aboard the Vessel and caused a fire, damaging the Vessel and her cargo on or about May 1, 2013.

36. By reason of the premises, plaintiffs have sustained damages as nearly as can now be estimated, no part of which has been paid, although duly demanded, in an amount in excess of $12,108,373.00.

**SECOND CAUSE OF ACTION**

37. Plaintiffs reiterate, repeat and reallege the foregoing paragraphs numbered 1 through 36, inclusive, with the same force and effect as if fully set forth herein.

38. Defendants, as manufacturers, shippers, owners, sellers and/or buyers, respectively, were aware, or should have been aware, of the specific, inherent dangerous nature of the Volvo automobiles prior to delivery of the Volvo automobiles to plaintiff ACL.

39. Defendants had a duty to warn plaintiff ACL because plaintiff ACL could not reasonably have known about the specific, inherent dangerous nature of the Volvo automobiles.

40. As a result of the defendants' failure to warn and/or inform plaintiff ACL of the specific, inherently dangerous nature of the Volvo automobiles, plaintiff ACL had no opportunity to take steps to prevent and/or guard against this casualty and the Volvo automobiles were subsequently loaded aboard the Vessel, which resulted in a fire, and damage to the Vessel and her cargo on or about May 1, 2013.

41. By reason of the premises, plaintiffs have sustained damages as nearly as can now be estimated, no part of which has been paid, although duly demanded, in an amount in excess of $12,108,373.00.

## THIRD CAUSE OF ACTION

42. Plaintiffs reiterate, repeat and reallege the foregoing paragraphs numbered 1 through 41, inclusive, with the same force and effect as if fully set forth herein.

43. Defendants were obligated and duty-bound, regardless of knowledge, to properly manufacture, test, package, and store the Volvo automobiles prior to carriage.

44. Plaintiff ACL could not, with the exercise of reasonable care, have perceived this inherent dangerous nature or improper production, testing, packaging, or storage prior to carriage.

45. As a result of the defendants' failure to ensure that the Volvo automobiles were properly manufactured, tested, packaged, and stored, and defendants' own negligence, the Volvo

7

automobiles became unstable, caused a fire, and damaged the Vessel and her cargo on or about May 1, 2013.

46. By reason of the premises, plaintiffs have sustained damages as nearly as can now be estimated, no part of which has been paid, although duly demanded, in an amount in excess of $12,108,373.00.

## FOURTH CAUSE OF ACTION

47. Plaintiffs reiterate, repeat and reallege the foregoing paragraphs numbered 1 through 46, inclusive, with the same force and effect as if fully set forth herein.

48. Defendants' Volvo automobiles were transported aboard the Vessel pursuant to contracts of carriage evidenced by the WWL sea waybills.

49. Pursuant to these WWL sea waybills, defendants were required to properly and accurately describe the Volvo automobiles and warrant that proper labels and markings were on the Volvo automobiles or their packaging, that the Volvo automobiles were properly prepared and packaged for transportation, that all necessary instructions for transportation have been given to the Carrier, and that the Volvo automobiles were safe for transportation on all modes of transportation.

50. In addition, under the WWL sea waybills, defendants shall hold the Carrier harmless and to indemnify it from any expenses or liability incurred, and to defend the Carrier if any aspect of these warranties is violated.

51. In breach of the WWL sea waybill terms, defendants failed to adequately identify and inform plaintiff ACL of the inherently dangerous nature of the Volvo automobiles.

52. As a result of the defendants' breach of the express terms of the WWL sea waybills the Volvo automobiles became unstable, caused a fire, and damaged the Vessel and her cargo on or about May 1, 2013.

53. By reason of the premises, plaintiffs have sustained damages as nearly as can now be estimated, no part of which has been paid, although duly demanded, in an amount in excess of $12,108,373.00.

## FIFTH CAUSE OF ACTION

54. Plaintiffs reiterate, repeat and reallege the foregoing paragraphs numbered 1 through 53, inclusive, with the same force and effect as if fully set forth herein.

55. The fire aboard the Vessel was due to the wrongful acts or omissions, including breach of contract, breach of express or implied warranty, etc., or other misconduct of defendants.

56. The fire aboard the Vessel was not caused or contributed to by any fault or neglect on the part of the plaintiff ACL and/or its agents, servants, or employees.

57. As a result of the casualty, plaintiff ACL has suffered damages and exposure to third-party claims, including damage to cargo, property, salvage claims, and claims for indemnity and contribution from third-parties, in an estimated aggregate amount in excess of $2,000,000.00.

58. As such, the casualty and all of plaintiff ACL's damages and losses as aforesaid are directly attributable to and caused by the aforesaid wrongful acts or omissions or other misconduct of defendants and/or their agents, without any fault of plaintiff ACL or its agents contributing thereto, and, therefore, defendants should be held solely and/or jointly liable to plaintiff ACL and/or all parties who have made claims against plaintiff ACL for all liability,

losses, and damages arising therefrom, including legal fees and disbursements incurred in defense of third-party claims.

59.     In the event that plaintiff ACL is nevertheless held liable to any party to any proceeding in the United States or abroad arising out of or relating to the casualty, said liability being expressly denied by plaintiff ACL, then such liability derives in whole or in part from the aforesaid wrongful acts or omissions or other misconduct of defendants, their officers, agents, servants, and employees and, therefore, plaintiff ACL should be granted full recovery over and against, and be indemnified by, or secure contribution from, defendants for all sums so recovered against plaintiff ACL, including attorneys' fees, expenses, interest, and costs.

**WHEREFORE,** plaintiffs pray that:

    a.    judgment be entered in favor of plaintiffs and against defendants for an award for damages to the plaintiffs, herein together with the costs and disbursements of this action;

    b.    the defendants be ordered to indemnify and/or contribute to any third-party claims against plaintiffs, including legal fees and disbursements incurred in defense of third-party claims; and

    c.    that judgment be entered in favor of plaintiffs for such other and further relief as this Court deems just and proper.

Dated: New York, New York
       March 14, 2014

                              LYONS & FLOOD, LLP

By: _____
     Edward P. Flood
     Jon Werner
     Attorneys for Plaintiffs
     One Exchange Plaza
     55 Broadway, Suite 1501
     New York, New York 10006
     (212) 594-2400
     eflood@lyons-flood.com

U:\FLOODDOC\2563068\Legal\Recovery\Complaint.doc